Argued and submitted September 9, alternative writ of mandamus dismissed December 30, 2005

## STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

## SYLVIA MARIE SAWATZKY,
*Defendant-Relator.*

(CC 000332189, 000937299; SC S52332)

125 P3d 722

Gregory F. Silver, Metropolitan Public Defender Service, Inc., Portland, argued the cause and filed the briefs for relator.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause for the adverse party on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DE MUNIZ, J.

## DE MUNIZ, J.

This is an original mandamus proceeding. Relator, Sawatzky, pleaded guilty to a number of crimes. At her original sentencing, the trial judge found that there were "substantial and compelling reasons justifying a deviation" from the presumptive sentences for those crimes and, based on that determination, imposed sentences that exceeded the presumptive ranges. Relator appealed to the Court of Appeals. That court concluded that the imposition of "enhanced" sentences violated relator's Sixth Amendment jury trial right under the principles articulated in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and remanded for resentencing. *State v. Sawatzky*, 195 Or App 159, 96 P3d 1288 (2004).

On remand, the trial court expressed its intention to empanel a jury to determine any facts necessary to reimpose "enhanced" sentences. Relator objected, arguing, *inter alia*, that doing so would violate her statutory and state and federal constitutional rights against former and double jeopardy.[1] When the trial court denied her jeopardy claim, relator petitioned this court for an alternative writ of mandamus, and this court issued the alternative writ to address that claim. For the reasons that follow, we conclude that relator's rights against former and double jeopardy do not prohibit the trial court from empaneling a jury to determine aggravating factors on which the trial court may rely in imposing sentences that exceed the presumptive range for the felony crimes to which relator pleaded guilty.[2] We therefore dismiss the alternative writ.

---

[1] Defendant's other arguments regarding the trial court's authority to empanel a jury and the constitutionality of Senate Bill 528 (2005) (which provides for the empaneling of sentencing juries, among other things) are rejected for the reasons expressed in *State v. Upton*, 339 Or 673, 125 P3d 713 (2005).

[2] The parties alternatively use the terms "aggravating facts," "aggravating factors," and "enhancement facts." We treat the various references as meaning the same thing: any fact that increases the sentence beyond the presumptive range established in the Oregon Felony Sentencing Guidelines for a particular crime. Similarly, we treat the terms "upward departure sentence" and "enhanced sentence" as referring to a sentence that exceeds the presumptive range established in the sentencing guidelines for that crime.

The relevant facts are undisputed. A 20-count indictment charged relator with nine counts of aggravated theft in the first degree, ORS 164.057; one count of theft in the first degree, ORS 164.055; and ten counts of forgery in the first degree, ORS 165.013. The charges describe relator's acts of embezzlement in the course of her employment as a bookkeeper. A separate indictment charged her with one count of failure to appear in the first degree, ORS 162.205. Relator pleaded guilty to all charges and submitted separate plea petitions in the two cases. When the trial court imposed sentences based on the two indictments, it entered "upward departure" sentences under the Oregon Felony Sentencing Guidelines (sentencing guidelines), *i.e.*, sentences that exceeded the presumptive range with respect to many of the counts in the first indictment and on the failure-to-appear charge alleged in the second indictment. *See* ORS 137.671(1) (court may impose sentence departing from the presumptive range if it determines that "there are substantial and compelling reasons justifying a deviation from the presumptive sentence"); OAR 213-008-0002(1)(b) (providing nonexclusive list of aggravating factors for upward departure sentences). Specifically, the trial court stated that it imposed enhanced sentences because the thefts that relator had committed resulted in greater-than-typical harm, relator had abused her employers' trust in stealing the money, and relator had failed to appear while on a security release. Relator's sentences totaled 100 months in prison.[3]

■■ Relator appealed, arguing, *inter alia*, that the trial court could not impose upward departure sentences because the enhancement factors on which it relied were not based on facts alleged in the indictment to which defendant had pleaded guilty. The Court of Appeals concluded that the enhanced sentences, based on judicial findings of fact instead of facts found by a jury, violated relator's jury trial right under the Sixth Amendment to the United States Constitution as construed in *Apprendi* and *Blakely*. *Sawatzky*, 195 Or App at 170-72. The Court of Appeals vacated the enhanced

---

[3] Relator contends—and the state does not contest—that, without the upward departures, the trial court would have sentenced her to 44-60 months in prison.

sentences and remanded the cases to the trial court for resentencing. *Id.* at 172.

On remand, the state moved to empanel a sentencing jury to determine whether the applicable aggravating facts existed that might provide the basis for imposing sentences that exceeded the presumptive range. Relator objected and argued that the court could not convene a new jury. According to relator, the trial court could not impose any sentence that exceeded the presumptive term of imprisonment for the charges alleged in the indictment. The trial court rejected relator's argument and granted the state's motion to empanel a jury. Relator then sought an alternative writ of mandamus in this court. After considering the petition and the state's response, this court issued the alternative writ.[4]

In *Apprendi*, the United States Supreme Court held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 US at 496-97. *Blakely* reinforced the principles articulated in *Apprendi* and established that the statutory maximum sentence in a guidelines sentencing scheme like Oregon's is the presumptive sentence that may be imposed as a result of a jury verdict of guilt. 525 US at 310-14. In addition, *Blakely* emphasized that the facts reflected in the jury verdict or admitted by the defendant form the outer boundary of support for a maximum sentence.

Relator argues that, as construed in *Apprendi* and *Blakely*, the Sixth Amendment requires that aggravating or enhancing sentencing factors of the kind identified in

---

[4] It is true, at least abstractly, that relator's position also could be vindicated on a direct appeal after conviction. This court, however, has not regarded that fact as defeating an application for a writ of mandamus in circumstances like those presented in this case. Instead, generally speaking, this court has concluded that mandamus is an appropriate remedy in a double or former jeopardy matter, because a defendant's "ordinary right to appeal after conviction does not vindicate his [or her] statutory right to be free from a second prosecution for the same offense." *State ex rel Turner v. Frankel*, 322 Or 363, 376, 908 P2d 293 (1995). Consistently with that view, and in light of the significant former and double jeopardy issue presented, we issued the alternative writ of mandamus in this case.

Oregon's sentencing guidelines be treated as elements of different and, in fact, greater substantive crimes. Specifically, relator contends that, because the aggravating or enhancing factors that the state now seeks to prove to a jury beyond a reasonable doubt are elements of crimes greater than those alleged in the indictments to which she pleaded guilty, the state is placing her in jeopardy a second time in violation of her state statutory and constitutional rights against former jeopardy and her federal right against double jeopardy. *See* ORS 131.515 (statutory double jeopardy protections);[5] Or Const, Art I, § 12 ("No person shall be put in jeopardy twice for the same offence"); US Const, Amend V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb").[6] The state's response to relator's jeopardy claim is based, for the most part, on the Oregon statutory definition of the term "offense." The state argues that "the term 'offense,' as used in the statutory double-jeopardy provision,[7] refers only to the conduct that comprises the statutorily defined felony or misdemeanor."[8] According to the state that

_____

[5] ORS 131.515 provides:

"Except as provided in ORS 131.525 and 131.535:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court.

"(3) If a person is prosecuted for an offense consisting of different degrees, the conviction or acquittal resulting therefrom is a bar to a later prosecution for the same offense, for any inferior degree of the offense, for an attempt to commit the offense or for an offense necessarily included therein.

"(4) A finding of guilty of a lesser included offense on any count is an acquittal of the greater inclusive offense only as to that count."

[6] The double jeopardy protections of the Fifth Amendment apply to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 US 784, 787, 89 S Ct 2056, 2058, 23 L Ed 2d 707 (1969). We note that relator does not appear to contend that the former jeopardy provisions of the state constitution operate differently from the federal double jeopardy provisions regarding the issue that she presents to this court in this case.

[7] ORS 131.505(1) provides that, unless the context requires otherwise, the meaning of the term "offense" is that provided in ORS 161.505.

[8] ORS 161.505 provides:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime, as described in ORS 161.515, or a violation, as described in ORS 153.008."

provision does not extend to relator's definition of "offense," which includes "sentence-enhancement facts." In other words, the state contends that, because aggravating or enhancing factors are not part of the statutory definition of an offense, the state is not prosecuting relator a second time when, on remand, the court empanels a jury to assess those aggravating or enhancing factors.

The state's argument is correct under the pertinent statutes and this court's case law concerning the sentencing guidelines scheme. The state's argument, however, does not directly address relator's claim that, as a matter of federal constitutional law, this court must treat "aggravating or enhancing factors" identified in Oregon's sentencing guidelines scheme as offense elements that trigger jury trial protection and, in circumstances such as this, former and double jeopardy protection. In view of the parties arguments, we must determine whether the United States Supreme Court's Sixth Amendment analysis in *Apprendi* and *Blakley* compels the conclusion that relator is entitled, at this stage of her criminal proceedings, to invoke the shield of former or double jeopardy to prevent the imposition of sentences that exceed the presumptive range for the crimes to which she pleaded guilty. We begin with the Court's decision in *Apprendi*.

*Apprendi* involved a defendant who fired several shots into the home of an African-American family. The indictment did not allege facts to establish a motive, and it did not charge circumstances otherwise justifying a "hate crime" sentencing enhancement under New Jersey law. The defendant pleaded guilty to several counts, including second-degree possession of a firearm for an unlawful purpose, which carried a potential sentence of five to ten years' imprisonment. At sentencing, the trial court enhanced that count as a hate crime, based on facts that the trial court found by a preponderance of the evidence after the defendant had pleaded guilty, and imposed a sentence of 12 years' imprisonment. On certiorari, the United States Supreme Court held that, under the Sixth Amendment, as applied to the states under the Due Process Clause of the Fourteenth Amendment, the state must submit to a jury and prove beyond a reasonable doubt any fact that increases the penalty beyond the applicable statutory maximum, other than the fact of a prior conviction. *Apprendi*, 530 US at 489.

*Apprendi* recognized the "constitutionally novel and elusive distinction between 'elements' and 'sentencing factors,' " but emphasized that "the relevant inquiry is one not of form, but of effect." *Id.* at 494. In other words, the inquiry should be whether "the required finding expose[d] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Id.*

The Court in *Apprendi* also observed:

> "The term ['sentencing factor'] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is *the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense.*"

*Id.* at 494 n 19 (original emphasis omitted; emphasis added). The Court emphasized that, in effect, New Jersey's sentencing enhancement scheme turned a second-degree offense into a first-degree offense under the state criminal code. *Id.* at 494. *Apprendi* characterized the New Jersey enhancement scheme as "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system" and reversed the conviction. *Id.* at 497.

■ Because the Sixth Amendment jury trial right extends to any fact that can increase the length of a sentence, and because the Court described such a fact as the functional equivalent of an offense element, many of the reasons underlying the traditional and constitutional distinction between a guilt determination and a sentencing determination for jeopardy purposes is no longer so clear. In other words, under *Apprendi*, a jury determination of a sentencing enhancement factor is now part and parcel of a jury trial and we now must view that determination similarly to a jury's decision to acquit or convict. In our view, because *Apprendi* and *Blakely* require that the adjudication of sentencing enhancement factors be fully adversarial within the context of a jury trial, the constitutional principles of former and double jeopardy—that the state shall not prosecute a person a second time for the same offense after acquittal or conviction—should apply equally to a jury determination of a sentencing enhancement factor.

That said, it nevertheless is clear that, in this case, relator is not entitled to former or double jeopardy protection. This is not a second prosecution. Rather, it is a sentencing

proceeding on remand—a continuation of a single prosecution. *See State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) ("A penalty phase hearing is merely a continuation of the same trial and not a separate or collateral proceeding threatening a new or different sanction."). Because it is relator who challenged the legality of her sentences in the Court of Appeals, she cannot now claim that she had any justifiable expectation of finality—a fundamental jeopardy requirement—with respect to her sentences.

Neither was relator "acquitted" on any of the sentencing enhancement factors that the state is obligated to prove to a jury beyond a reasonable doubt in accordance with the Sixth Amendment. Instead, the original sentencing court concluded that the aggravating factors had been proved and that substantial and compelling reasons justified imposing sentences that exceeded the presumptive range for the various crimes. The Court of Appeals vacated those sentences only because a jury had not determined the aggravating factors beyond a reasonable doubt as required under the Sixth Amendment. That court did not hold—as would be required for former or double jeopardy to apply—that the record would not permit the aggravating factors to be found beyond a reasonable doubt.

Nevertheless, relator argues that, because sentencing enhancement factors must be treated under *Apprendi* and *Blakely* as the functional equivalent of "elements" of a criminal offense for jeopardy purposes, the state's failure to allege those factors or elements in the indictments precludes the state from now seeking sentences based on those factors or elements.

That aspect of relator's jeopardy argument hinges on an assumption that *Apprendi* and *Blakely* require that each element of the factual underpinnings of the sentence enhancement must be pleaded in the charging instrument. Apparently, relator assumes that she must be charged again in new indictments that contain the facts pertinent to the sentencing enhancements. At the same time, she observes that she already had pleaded guilty to the indictments and the indictments cannot be rescinded without her consent.

■ We agree with relator that *Apprendi* describes a "sentence enhancement" as "an increase beyond the maximum authorized statutory sentence" and "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." 530 US at 494 n 19. Although *Apprendi* requires that the jury find the facts that would support an enhanced sentence, we do not agree that *Apprendi* requires, as a matter of state criminal procedure, that enhancement factors be set out in the indictment. Certainly the Court's holding in *Apprendi* did not demand that procedure. Instead, the Court declined to answer that question in *Apprendi*, and this court similarly has not so held.[9] *See State v. Oatney*, 335 Or 276, 66 P3d 475 (2003), *cert den*, 540 US 1151 ("deliberateness" finding required for death sentence need not be pleaded in indictment). Further, this court has recognized that neither *Apprendi* nor *Blakely* held that the indictment clause of the Fifth Amendment to the United States Constitution requires that a criminal indictment in a state prosecution contain facts necessary for the state to obtain a sentencing enhancement. *State v. Cox*, 337 Or 477, 499, 98 P3d 1103 (2004). As we view it, under *Apprendi*, "if defendant has a federal constitutional right to have a fact pled in the indictment, that right derives solely from the Fifth Amendment [and t]he decision in *Blakely* does nothing to change that suggestion." *Id.* Finally, the indictment clause of the Fifth Amendment applies to only federal prosecutions, because the Fourteenth Amendment does not require that it apply to the states. *Hurtado v. California*, 110 US 516, 4 S Ct 111, 28 L Ed 232 (1884).

Nothing in *Apprendi* or *Blakely* alters the definition of an "offense" set out in ORS 161.505. In our view, so long as

---

[9] The Court observes in *Apprendi*:

"[The defendant] has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the 'due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, and the right to have every element of the offense proved beyond a reasonable doubt. That Amendment has not, however, been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury' that was implicated in our recent decision in *Almendarez-Torres v. United States*, 523 US 224, 118 S Ct 1219, 140 L Ed 2d 350 (1998). We thus do not address the indictment question separately today."

530 US at 477 n 3 (some citations omitted).

a defendant has timely notice that the state intends to prove certain aggravating or enhancing factors necessary for the imposition of a sentence that exceeds the presumptive range, and the trial court affords a criminal defendant the opportunity to exercise his or her jury trial right in that regard, the federal constitution is satisfied. Here, relator cannot now complain that she does not know the precise nature of the aggravating or enhancing factors the state now is obligated to prove to a jury.

We hold that relator has no statutory or constitutional jeopardy right that prohibits the empaneling of a jury to determine whether certain aggravating factors may support the imposition of sentences that exceed the presumptive range for the crimes to which relator pleaded guilty.

Alternative writ of mandamus dismissed.