Argued and submitted January 12, decision of Court of Appeals and judgment of
circuit court affirmed December 30, 2005

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROBERT DALE HEILMAN,
*Petitioner on Review.*

(CC 001139142; CA A116697; SC S51479)

125 P3d 728

Eric M. Cumfer, Senior Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. With him on the briefs were Hardy Myers, Attorney General and Mary H. Williams, Solicitor General.

DURHAM, J.

## DURHAM, J.

In this criminal case, defendant challenges the 20-year enhancement of his prison sentence as a "dangerous offender" under ORS 161.725(1)(a).[1] His primary contention is that the trial court erred in sentencing him as a dangerous offender because the state had not pleaded in the indictment the facts necessary to support such an enhancement. The trial court rejected that argument before applying a 20-year enhancement to his sentence. The Court of Appeals affirmed the judgment without an opinion. *State v. Heilman*, 193 Or App 329, 92 P3d 767 (2004). On review, we conclude that the trial court did not err. Accordingly, we affirm the decision of the Court of Appeals and the judgment of the trial court.

A grand jury indicted defendant for 30 crimes arising from a criminal episode that began when he broke into his ex-wife's house. Once inside the house, he assaulted his ex-wife and one of their two daughters. He then fled in his van, intentionally ramming a string of vehicles, including a police vehicle. After he stopped at a convenience store, he attempted to take a store clerk as a hostage before police subdued him.

Defendant waived his right to a jury trial and asserted that he was guilty except for insanity. *See* ORS 161.295(1) ("A person is guilty except for insanity if, as a result of a mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."). At his trial to

---

[1] ORS 161.725 provides, in part:

"(1) Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

the court, his expert witness, a psychologist, testified that defendant suffered from "intermittent explosive disorder."[2] According to defendant's psychologist, intermittent explosive disorder is an impulse control disorder in which persons cannot resist their aggressive tendencies. Specifically, the psychologist testified:

> "Intermittent explosive disorder is a condition in which individuals fail to consistently contain or inhibit their impulses to aggression. And the aggression typically may take a variety of forms, including verbal aggression, physical aggression against objects, physical aggression against individuals.
>
> "Typically, these aggressive outbursts are severe relative to the level of provocation. So these are people who are more likely to truly explode in an extreme fashion over relatively minor provocation."

In addition, the psychologist testified that defendant had provided him with "a history of several explosive outbursts in which he broke or smashed things or assaulted other people." The psychologist also testified that defendant's "pattern of assaults and explosions over the last 15 or 20 years suggest that he's not consistently able to contain his impulses." The psychologist concluded that a combination of alcohol and defendant's condition had rendered him unable to control his impulses on the night that the police arrested him. The trial court, however, rejected defendant's explanation that he was guilty except for insanity and convicted him of 21 of the 30 pending criminal charges.

At sentencing, the state characterized defendant as a dangerous offender under ORS 161.725(1)(a) and sought a statutory sentencing enhancement. One of the state's experts, another psychologist, underscored many of the same facts on which defendant had relied in his failed attempt to establish an insanity defense, such as his anger management problem, his failure to maintain a treatment regimen, and his history of abusive conduct toward others. In particular,

---

[2] The psychologist's diagnoses of defendant were manifold: "alcohol dependence that was in remission as a function of his incarceration, intermittent explosive disorder, major depressive disorder, recurrent and severe, dysthymic disorder, and polysubstance dependence that reportedly had been in sustained remission." The psychologist also diagnosed a borderline personality disorder.

the state psychologist testified that defendant's expert's diagnosis of intermittent explosive disorder fit within a broader diagnosis of borderline personality disorder. The state's psychologist believed that there was a high risk that defendant would cause serious harm to others in the future.

Defendant's counsel objected that the state was seeking to characterize defendant as a dangerous offender, without having pleaded that characterization in the indictment and without having given notice that the state would seek an enhanced sentence. In making that argument, defendant referred to *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000); however, at the same time, he maintained that *Apprendi* did not address the precise issue that he was arguing:

> "[I]f the State is planning to [seek a dangerous offender enhancement, then defendant] has a tactical strategic decision to make before going to trial about whether he's going to avail himself of the otherwise best defense, the most reasonable, most useful and most appropriate defense at his disposal, if it's going to cost him, potentially, many years more than he'd be exposed to by conviction.

> "And it puts him in a bind * * * that I think points out the fundamental unfairness and unconstitutionality of the dangerous offender scheme.

> "Because it would require—When the court in [*Apprendi*] brings up the fact and points out that these things need to be pled and there's a special category there, but proven beyond a reasonable doubt, that starts a pretty vicious circle when we're looking at a statute like the [dangerous offender] statute or the scheme that's involved in it.

> "Because my client or any client similarly situated is going to be put in a place where he's not allowed, he's not able to present his best and most viable defense without, essentially, subjecting himself to an additional posttrial prosecution, a prosecution for a sentencing that goes far beyond what would otherwise be his potential punishment.

> "* * * * *

> "And it's not a situation that the [*Apprendi*] court addressed in particular except in the dicta the Court mentioned, probably because the situation did not call for it. But

I think they are raising, not only an interesting but, in this case, a vital issue.

"There is no notice to [defendant]. If the State gives him notice and says go on, go ahead, put on your [guilty except for insanity defense]; but if you do it, it will cost you 30 years if we can get you later, aside from the fact of whether or not a jury is going to be proven beyond a reasonable doubt that that's — that they're entitled to that, it puts him in a place where he cannot assert his defense. It's stripping him of the right to defend himself. So we have a problem there."

In particular, defendant argued that the state had failed to give notice in the indictment that it would seek to impose a sentencing enhancement against defendant as a dangerous offender. Defendant did not ask the court to impanel a jury before sentencing defendant.

The trial court found that defendant qualified as a dangerous offender and made the following findings:

"I easily can find beyond a reasonable doubt that ORS 161.725 applies. The subsection A, he has been convicted and found guilty of a class A felony. There is testimony in the record, not just from expert witnesses at this hearing, but you—the severity of the—and nature of the incident itself, as [the prosecutor] pointed out on the record, but also the testimony at the trial was more explicit in the fact that these acts started occurring at a very early age which is—confirms a personality disorder."

The court sentenced defendant to 37 years' incarceration, 20 years of which represented a dangerous-offender enhancement under ORS 161.725(1)(a).

On appeal, defendant asserted that his dangerous-offender sentence violated the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, defendant argued that imposition of the enhanced sentence as a dangerous offender had violated his constitutional rights to (1) notice of the criminal offense for which he was to be tried; (2) a grand jury determination of the charges to be brought against him; (3) a trial limited solely to the crimes charged; and (4) adequate notice regarding the severity of his penalty.

The Court of Appeals affirmed the trial court's judgment without opinion. This petition for review followed.

■ On review, defendant focuses his arguments on the same provisions of the United States Constitution.[3] In particular, defendant notes that, under *Apprendi*, 530 US at 476, 490, any element of a criminal charge that increases punishment beyond the statutory maximum must be (1) pleaded in the charging instrument; (2) proved beyond a reasonable doubt; and (3) submitted to a jury for its determination. Defendant maintains that the trial court disregarded those rights in imposing a 20-year sentence enhancement and contends that this court should follow *Apprendi* and overturn the enhanced sentence.

*Apprendi* involved a defendant who fired several shots into the home of an African-American family. The indictment did not charge a "hate crime" sentencing enhancement under New Jersey law. The defendant pleaded guilty to several counts, including second-degree possession of a firearm for an unlawful purpose. In the penalty phase, the trial court enhanced that count as a hate crime and imposed a sentence beyond the statutory maximum for the underlying crime of second-degree unlawful firearm possession. *Apprendi*, 530 US at 469-71. The United States Supreme Court held that, under the Due Process Clause of the Fourteenth Amendment and under the Sixth Amendment, the state must submit to a jury and prove beyond a reasonable doubt any fact that increases the penalty beyond the applicable statutory maximum, other than a prior conviction. *Id.* at 489.

Defendant, relying on *Apprendi*, argues that the dangerous-offender enhancement in this case is invalid because the state did not (1) submit the necessary facts to a jury for the jury's determination; or (2) plead it in the charging instrument.[4] Defendant argues in support of his first

---

[3] Defendant cited, but developed no argument under, Article I, section 11, of the Oregon Constitution before the Court of Appeals. Moreover, defendant did not demonstrate that he had asserted any argument under that provision in the trial court. Those same problems recur in defendant's briefs in this court. We decline to search the record to determine whether defendant preserved a state constitutional claim in the trial court.

[4] Defendant also argues that the factfinder at sentencing must find the pertinent facts by a standard of beyond a reasonable doubt. Here, the trial court did just

claim that, under *Apprendi*, he lost the right to a jury trial to determine the facts underlying a dangerous-offender determination. That argument fails, as we explain below.

■　　Defendant failed to preserve the argument that the state should have submitted the dangerous-offender enhancement to a jury. The principle of preservation of issues for appellate review requires a defendant to provide an explanation of his or her position in the trial court, and that explanation must be sufficiently specific to ensure that the trial court can address and correct the alleged error at trial, if correction is warranted. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).[5] The record demonstrates that defendant did not express a willingness to submit any part of his case to a jury. At the threshold of trial, defendant waived a jury and opted for a trial by the court; neither at that time nor later did he indicate to the court that he intended to limit his waiver in any way.

■　　To be valid, a waiver of a jury trial must show " 'an intentional relinquishment or abandonment of a known right or privilege.' " *State v. Harris*, 339 Or 157, 173, 118 P3d 236 (2005) (quoting *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938)). Here, defendant's waiver constituted defendant's agreement to forego a jury trial on the charges listed in the indictment. *See Harris*, 339 Or at 173 (so stating). Defendant therefore intentionally and knowingly relinquished his right to a jury trial on the pending charges. Moreover, as noted, defendant did not purport to qualify his waiver of a jury trial in any way; neither did he subsequently assert during the course of the trial that any limits or conditions applied to his waiver. We conclude that defendant, once having made an apparently unqualified waiver of the jury right, had the burden of objecting in some manner, thereby preserving his argument for appeal, if he regarded any action

that. The trial court found beyond a reasonable doubt that defendant qualified as a dangerous offender under the elements of ORS 161.725.

    [5] Defendant raises additional arguments based on *Apprendi* for the first time in his brief on the merits. We decline to address those arguments because he did not preserve them, ORAP 5.45(1), and they do not constitute error apparent on the face of the record, in part because we conclude that *Apprendi* does not apply to this case in light of defendant's decision to abandon his right to a trial of the facts by a jury.

by the trial court as a violation of his right to trial by jury. *See Wyatt*, 331 Or at 343 (objection must be sufficiently specific so that the trial court can identify error and correct it immediately, if necessary).

Before sentencing, defendant's counsel did not make any kind of discernible objection or other assertion that defendant wanted a jury, rather than the court, to determine the facts for purposes of sentencing. That fact stands in sharp contrast to this court's decision in *Harris*. In that case, the defendant expressly objected to the trial court's use of his prior juvenile adjudication at his sentencing hearing. As a result, this court could not conclude that the "defendant's acknowledgment of a prior juvenile adjudication in filling out his guilty plea amounted to either an admission or a knowing waiver of his jury trial right for sentencing purposes." *Harris*, 339 Or at 173.

On review, defendant suggests that his trial counsel asked for a jury trial for sentencing purposes and maintains that the request is reflected in the following statement:

> "Then I would say, reaching the more central holding of [*Apprendi*], that—and admittedly, they were talking about a different kind of law and the statute *and they were talking, obviously, a different kind of proceeding in that it was a jury trial.*
>
> "* * * * *
>
> "*And the fact that this trial was a court trial, obviously, puts a new wrinkle into things.* And I can see there's an argument that can be made that says, well, since it was a court trial, since Your Honor heard the entire thing, all the evidence and so forth, that you could now somehow magically, postconviction, after the conviction was handed down, now revisit the issue of whether in fact you're satisfied that the State proved beyond a reasonable doubt that [defendant] suffered from a severe personality disorder to the extent that the dangerous offender statute could be applied to him constitutionally.
>
> "And I would suggest that the Court can't do that, that the Court can't make itself into two entities, even though the Court may at times have two different functions."

(Emphasis added.) We cannot construe the foregoing statement as an objection or assertion that the trial court was required to empanel a jury to find the requisite facts before sentencing defendant. Instead, it appears from the emphasized remarks that, far from asserting that his client wanted or was entitled to a jury trial, defendant's counsel merely was noting that the court was about to embark on a different stage of the proceedings; that is, after the court had finished hearing the evidence produced during the guilt phase, the court then would have to recall and consider that evidence during the sentencing phase. In no sense did defendant ask for a jury trial. We conclude that defendant failed to preserve the argument that the court should have empaneled a jury to decide the requisite facts for sentencing.

■ Ultimately, the state turned defendant's evidence against him and showed, under ORS 161.725(1)(a), that "defendant [was] suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." In producing evidence of his own psychological condition, then, defendant admitted facts sufficient to support the trial court's findings that he was subject to an enhanced sentence as a dangerous offender, thus foreclosing any relief under *Apprendi*.

■ Defendant also contends that, under *Apprendi*, the state must plead the elements of the dangerous-offender enhancement in the indictment. In other words, he maintains that the indictment must provide notice of a potential sentence enhancement if the trial results in a verdict of guilty. The argument fails, however, because *Apprendi* did not establish that the elements of each offense and sentencing enhancement must be pleaded in an indictment. *See State v. Sawatzky*, 339 Or 689, 698, 125 P3d 722 (2005) (reaching same conclusion). Instead, the Court in *Apprendi* declined to answer that question:

> "[The defendant] has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the 'due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, and the right to have every element of the offense

proved beyond a reasonable doubt. That Amendment has not, however, been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury' that was implicated in our recent decision in *Almendarez-Torres v. United States*, 523 US 224, 118 S Ct 1219, 140 L Ed 2d 350 (1998). We thus do not address the indictment question separately today."

530 US at 477 n 3, 120 S Ct at 2356 n 3 (some citations omitted). In *State v. Cox*, 337 Or 477, 499, 98 P3d 1103 (2004), this court recognized that neither *Apprendi* nor *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), held that the indictment clause of the Fifth Amendment to the United States Constitution requires that a criminal indictment in a state prosecution contain facts necessary for the state to obtain a sentencing enhancement. Applying *Apprendi*, this court in *Cox* stated that, "if defendant has a federal constitutional right to have a fact plead in the indictment, that right derives solely from the Fifth Amendment[, and t]he decision in *Blakely* does nothing to change that suggestion." *Cox*, 337 Or at 499. The indictment clause of the Fifth Amendment applies to only federal prosecutions, because the Fourteenth Amendment does not require that it apply to the states. *Hurtado v. State of California*, 110 US 516, 534-38, 4 S Ct 111, 28 L Ed 232 (1884).

Defendant asserts alternatively that, if he is not entitled to specific notice in the indictment, then the Due Process Clause of the Fourteenth Amendment requires some other kind of notice of matters that may enhance a criminal sentence. This court has rejected a similar argument. In *State v. Terry*, 333 Or 163, 185, 37 P3d 157 (2001), the defendant contended that an indictment in a death-penalty prosecution must charge that the defendant acted deliberately because the jury was asked during the penalty phase to determine "whether the conduct of the defendant that caused the death of the deceased was committed *deliberately* and with the reasonable expectation that death of the deceased or another would result" (emphasis added). This court concluded that, under *Apprendi*, the failure to plead the element that a defendant committed a capital crime deliberately was not error. *Terry*, 333 Or at 186. As this court previously had

determined, "[t]here is no requirement of pleading an indict-ment that requires the indictment to set forth possible pen-alties that the law may fix for guilt on a particular charge." *State v. Wagner*, 305 Or 115, 172, 752 P2d 1136 (1988), *vac'd and rem'd on other grounds*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989).

Defendant maintains that the state must give notice that the statute would be used in his specific case. We disa-gree. We think that this is a matter for cautious legal advice. In counseling a client on the advisability of seeking a finding of guilty except for insanity, and providing the facts to the trier of fact that might support such a determination, defense counsel would be wise to explain to the client the possibility that the state might seek to use admitted facts against the defendant. As we noted above, *Apprendi* and *Blakely* do not foreclose the state's use of facts that the defendant chooses to admit at trial.

The decision of the Court of Appeals and the judg-ment of the circuit court are affirmed.