Submitted on record and briefs September 26, 2005, affirmed May 17, petition for review denied October 19, 2006 (341 Or 548)

# STATE OF OREGON,
*Respondent,*

*v.*

# DENNIS HOWARD PHILLIPS, JR.,
*Appellant.*

### 025400; A121996

135 P3d 461

─────────

David E. Groom filed the briefs for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for one count of delivery of a controlled substance to a minor, *former* ORS 475.995 (2003), *renumbered as* ORS 475.906 (2005); one count of attempted delivery of a controlled substance to a minor, ORS 161.405 and *former* ORS 475.995 (2003); two counts of providing liquor to a person under 21 years of age, ORS 471.410; two counts of endangering the welfare of a minor, ORS 163.575; and two counts of coercion, ORS 163.275. He asserts three assignments of error: (1) The trial court erred in denying his motion for a judgment of acquittal with respect to the coercion charges; (2) the trial court erred in ordering him to complete a sex offender evaluation and treatment as a condition of his probation; and (3) the trial court erred in imposing a departure sentence based on an aggravating factor found by the judge. We reject each of his assignments and affirm.

The relevant facts are not in dispute. Defendant was 25 years old when he first met D, a 12-year-old girl who lived across the street with her family. They met when defendant invited D and some of her friends to his apartment to smoke marijuana. D soon began regular visits to defendant's apartment, almost every day after school. The two would occasionally drink alcohol or smoke marijuana. On one occasion, defendant used methamphetamine in D's presence.

Defendant told D that he loved her and that he was confused about whether to "treat [her] like a woman or treat [her] like a child or both." Defendant also engaged in graphic conversations about sex with D. He described, for example, sexual positions to her, which she would then demonstrate as he watched.

Two specific incidents gave rise to the charges of coercion that defendant challenges on appeal. In the first incident, defendant asked D if she wanted to watch a movie. When she said she did, defendant locked the door and sat next to her on the couch. He then started playing a movie that depicted graphic sex acts.

D asked defendant to turn off the movie, but he refused to do so. D got up to turn off the movie herself, but

defendant pushed her back down on the couch. Defendant then fast-forwarded the movie to another explicit sex scene. D was "terrified" at that point. She did not know what defendant might do and feared that he wanted to have sex with her. At that point, D told defendant that, if he did not turn off the video, she would call the police. Defendant then turned off the video, and D left. After that incident, D continued to visit defendant's apartment after school.

The second incident involved B, a friend of D. B was also 12 years old when she met defendant, and, although she did so less frequently than D, she also spent some time at defendant's apartment after school, where she drank alcohol and smoked marijuana.

On the occasion in question, B was sitting next to defendant outside his apartment when he began to touch her inappropriately. Defendant rubbed B's arm and upper thigh and touched her breasts, buttocks, and crotch. B objected, telling defendant to "back off" and repeatedly pushed him away. Defendant's actions made her "really uncomfortable," and she wanted to leave. When defendant continued to touch her in this manner, she got up to leave, at which point defendant grabbed her arm. B told defendant to let her go. When he did not, she slapped him and was then able to run next door to the home of a neighbor. Defendant's grip left a bruise on her arm.

Defendant was arrested and charged with multiple counts related to supplying alcohol and drugs to a minor and endangering the welfare of a minor. Defendant was also charged with two counts of coercion based on the incidents described, and three counts of sexual abuse in the first degree based on the incident involving B. Defendant pleaded not guilty to all the charges, and his case was tried to a jury.

At trial, defendant moved for a judgment of acquittal with regard to both coercion charges. Defendant argued that the evidence of what happened in the two incidents with D and B was legally insufficient to prove coercion as that crime is defined by ORS 163.275. The state argued that the evidence was sufficient to meet each of the elements of coercion. The trial court denied defendant's motions.

The jury acquitted defendant on the sex abuse counts, but it convicted him on the other charges, including both counts of coercion and the counts of delivery of a controlled substance to a minor, attempted delivery of a controlled substance to a minor, furnishing liquor to a minor, and endangering the welfare of a minor. The trial court imposed an upward dispositional departure sentence on defendant's conviction for attempted delivery of a controlled substance, based on the court's finding that the crime involved "multiple incidents or victims." In all, defendant was sentenced to consecutive sentences totaling 91 months' imprisonment, plus five years' probation. As a condition of defendant's probation, the trial court ordered defendant to undergo an evaluation by a psychologist or psychiatrist to determine whether he had a propensity to commit sex crimes and needed to undergo sex offender counseling. The court further ordered that, in the event that sex offender counseling was recommended on the basis of the evaluation, defendant must undergo that counseling and meet a variety of other related requirements, including submitting regular progress reports, receiving written approval from his probation officer and therapist before having contact with any women or girls, not possessing pornography, and taking regular polygraph tests.

■ On appeal, defendant first assigns error to the trial court's denial of his motion for a judgment of acquittal on the coercion charges. In reviewing the denial of a motion for a judgment of acquittal, we consider the evidence in the light most favorable to the state, including all reasonable inferences that can be drawn from that evidence, and determine whether any rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Rose*, 311 Or 274, 281, 810 P2d 839 (1991). Applying that standard to the facts of this case, we conclude that there was sufficient evidence from which a rational jury could find the elements of coercion as that crime is defined by ORS 163.275.

■ ORS 163.275 provides, in part:

"(1) A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to

abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

"(a) Unlawfully cause physical injury to some person; or

"(b) Unlawfully cause damage to property; or

"(c) Engage in conduct constituting a crime; or

"(d) Falsely accuse some person of a crime or cause criminal charges to be instituted against the person; or

"(e) Cause or continue a strike, boycott or other collective action injurious to some person's business, except that such a threat shall not be deemed coercive when the act or omission compelled is for the benefit of the group in whose interest the actor purports to act; or

"(f) Testify falsely or provide false information or withhold testimony or information with respect to another's legal claim or defense; or

"(g) Unlawfully use or abuse the person's position as a public servant by performing some act within or related to official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely."

As defined by ORS 163.275(1), the crime of coercion thus has three distinct elements: the accused must (1) compel a victim to do something, *see State v. Johnson*, 110 Or App 362, 362, 822 P2d 153 (1991) (reversing a conviction for coercion where trial testimony conclusively showed that the victim was not actually compelled); that (2) the victim has a right not to do; by (3) making the victim afraid that if he or she does not do it, one of the enumerated consequences will result.

In this case, the state's theory is that defendant committed coercion when he compelled both D and B to refrain from leaving—in D's case, forcing her to watch a pornographic video and, in B's case, forcing her to stay next to him after inappropriately touching her—by instilling fear in the children that, if they tried to leave, he would physically harm them.[1]

---

[1] The indictment accused defendant of committing coercion by compelling D to "engage in conduct from which [she] had a legal right to abstain, to-wit: watch

Defendant argues that there is insufficient evidence to support either of the charges of coercion, for two distinct reasons. First, defendant maintains, the required element of compulsion is missing. In the case of D, defendant argues, the evidence shows that, after she threatened to call the police, he turned off the video, and she left. That, defendant argues, demonstrates a *lack* of coercion. Similarly, in the case of B, defendant argues, the evidence shows that, when he grabbed her, she slapped him and then left.

Second, defendant maintains that, although the evidence may show that both girls were afraid, they were not afraid in the sense the statute requires. According to defendant, the evidence shows that they were not afraid of what would happen to them if they *refused* to comply with his demands, as the statute requires. Instead, he argues, the evidence shows that they were afraid of what would happen to them if they were to *accede* to his demands.

The state responds that there is sufficient evidence to support the elements of coercion as charged in the indictment as to both incidents. The state argues that defendant's behavior—pushing D down on the couch and grabbing B by the arm—could reasonably be construed as implicit threats of physical injury if the girls refused to do what he wanted them to do. Further, the state argues, there is sufficient evidence from which a reasonable jury could conclude that the girls were frightened into complying. We agree with the state.

■■ We begin with the evidence as to the incident involving D. A reasonable juror could infer from that evidence that defendant, by locking the door and pushing D back down onto the couch when she objected to the movie, implicitly demanded that she stay on the couch and watch the movie and, moreover, implicitly threatened to injure her if she did not. A rational juror could also infer from that evidence that D, a 12-year-old girl who was pushed down onto a couch and told to watch a pornographic movie by a 25-year-old man,

---

pornographic movies by means of instilling in [her] a fear that if [she] refrained from the conduct compelled, defendant would unlawfully cause physical injury to [her]"; and by compelling B "to abstain from engaging in conduct in which [she] had a legal right to engage, to-wit: leave by means of instilling in [her] a fear that if [she] engaged in the conduct contrary to said compulsion, defendant would unlawfully cause physical injury to [her]."

complied out of fear of what he might do to her if she did not. Although she did leave soon thereafter, that fact does not preclude the inference that, for some period of time before she left, she was compelled to watch the video. That is, a rational juror could reasonably infer from the evidence that D would have left earlier and would not have been forced to watch more of the movie had she not been compelled to remain on the couch out of fear.

■■ We turn to the evidence as to the incident involving B. Defendant touched her inappropriately several times, and she repeatedly told him to stop. When she did stand up to leave, defendant stopped her from doing so. He grabbed her long enough and hard enough to leave a bruise. She told him to let her go, and then she slapped him and ran away. A reasonable jury could infer from those facts that all of the elements of coercion were met: by forcefully grabbing B, defendant made an implicit threat that she risked physical injury if she tried to leave, and B—a 12-year-old girl being grabbed by a 25-year-old man—remained out of fear. The fact that B eventually slapped defendant and left does not defeat that inference. A reasonable juror could infer from these facts that, by grabbing her, holding her, and stopping her from leaving, defendant elicited a fear that caused her to remain, even if briefly. That, again, is enough to constitute coercion. The trial court did not err in denying defendant's motions for judgments of acquittal on the coercion charges.

■ Defendant's remaining assignments of error concern the lawfulness of his sentence. Defendant contends that the trial court erred in ordering him to comply with conditions of probation "as if he were a sex offender." Defendant argues that the court lacked the authority to impose such conditions because he was not convicted of a sex offense. The state responds that the court did have the authority, under ORS 137.540(2), to order the conditions, because defendant clearly acted with a sexual purpose. We agree with the state.

■ We review the trial court's imposition of probation conditions for errors of law. *See State v. Donovan*, 307 Or 461, 463, 770 P2d 581 (1989). ORS 137.540 provides that the trial court may sentence a defendant to probation and describes the conditions that a defendant on probation must meet. ORS

137.540(1) describes certain general conditions that are automatically imposed, unless the court directs otherwise. Among those general conditions is that, if the defendant has been convicted of a sex offense, the conditions shall include a sex offender treatment program. ORS 137.540(1)(m). The statute further provides that the court has discretion to impose "any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both * * *." ORS 137.540(2).

In *State v. Mack*, 156 Or App 423, 429, 967 P2d 516 (1998), we held that, even if a defendant has not been convicted of a sex offense, a trial court may order sex offender evaluation and treatment as a special condition under ORS 137.540(2), as long as the defendant acted with a "sexual purpose" in committing the crime for which he was convicted. We held that there must be a factual record to support the imposition of such a special condition under ORS 137.540(2); that is, there must be some evidence in the trial record from which one could reasonably infer that the defendant acted with a sexual purpose. *Id.* at 428-29 (citing *State v. Saxon*, 131 Or App 662, 664, 886 P2d 505 (1994)).

In this case, the trial court expressly found that defendant acted with a sexual purpose in committing the offenses for which he was convicted, and there is ample evidence to support the finding. Defendant spoke explicitly about sex to D, and he was convicted of coercing her to watch a pornographic movie with him. The other victim, B, testified that defendant touched and rubbed her breasts, buttocks, and crotch. Defendant's conduct thus evinced a clear sexual purpose. The conditions imposed by the trial court were reasonably related to the charges for which he was convicted. Moreover, considering the age of the victims and defendant's behavior toward them, the conditions imposed by the trial court were also reasonably related to the needs of defendant for both the protection of the public and the reformation of the offender. The trial court did not err in imposing the special conditions of probation.

In his final assignment of error, defendant contends that the trial court erred in imposing an upward dispositional

departure sentence on his conviction for attempted delivery of a controlled substance based on the court's finding that the crime involved "multiple incidents or victims." Defendant argues that imposing the departure sentence based on facts that were not submitted to a jury violated his constitutional right to a jury trial as explained by the United States Supreme Court in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). Defendant concedes that he did not advance such a challenge to the trial court, but he argues that the sentence should be reviewed as plain error.

The state responds that the trial court did not err in imposing the departure sentence, because defendant admitted the facts on which the court based that departure. The state argues that defendant's testimony at trial that he had smoked marijuana with D "probably ten times" provided a sufficient basis for a departure based on the aggravating factor of "multiple incidents or victims" and thus the imposition of a departure sentence based on that factor did not violate defendant's Sixth Amendment right under *Apprendi* and *Blakely*. The state emphasizes that defendant did not preserve the issue and argues that, at the very least, given defendant's admission, it was not "plain error" for the court to impose a departure sentence based on "multiple incidents or victims."

ORAP 5.45(1) allows an appellate court to consider an unpreserved assignment of error where such error is "apparent on the face of the record." An error of law is apparent if "the legal point is obvious" and is "not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). After considering recent cases in which the Supreme Court has considered a defendant's alleged admissions in the context of enhanced sentencing, we agree with the state that, given defendant's testimony, the imposition of the departure sentence in this case was not plainly erroneous.

Although, under *Apprendi* and *Blakely*, a defendant has a Sixth Amendment right to have any fact that will extend his sentence beyond the statutory maximum proved

to a jury, that right can effectively be waived when the defendant admits to the facts that justify an enhanced sentence. *See Blakely*, 542 US at 303 (defining the "statutory maximum" for *Apprendi* purposes as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"). In *State v. Harris*, 339 Or 157, 175, 118 P3d 236 (2005), however, the Supreme Court was careful to explain that, to constitute an admission for purposes of *Apprendi* and *Blakely*, a defendant must make an informed and knowing waiver of his or her right to a jury "for sentencing purposes." *Harris* involved a defendant who, in filling out a plea petition, listed a prior juvenile rape adjudication. At the sentencing hearing, the trial court imposed a departure sentence based on the existence of that prior adjudication. The defendant objected that, under *Apprendi*, he had a right to have that fact proved to a jury. The trial court rejected the defendant's argument and imposed an enhanced sentence, and we affirmed. *State v. Harris*, 192 Or App 602, 89 P3d 96 (2004). The Supreme Court reversed and remanded. The court held that, in listing the prior adjudication on his plea petition, the defendant had not knowingly and intentionally admitted to the prior adjudication for the purposes of sentencing. 339 Or at 173.

A more recent case, *State v. Heilman*, 339 Or 661, 125 P3d 728 (2005), also bears on the issue of what constitutes an admission for purposes of *Apprendi*. *Heilman* involved a defendant who had been sentenced as a dangerous offender. After waiving his right to a jury trial, the defendant attempted to mount an insanity defense in his trial before the court. He presented the testimony of a psychologist, who testified that the defendant suffered from a psychological disorder that was characterized by intermittent explosive outbursts. The court ultimately rejected the defendant's insanity defense and convicted him. At the sentencing hearing, the state relied on the same evidence that the defendant had presented in support of his insanity defense to support the claim that the defendant was a dangerous offender who was likely to repeat. The trial court sentenced the defendant as a dangerous offender, which had the effect of lengthening his sentence by 20 years. 339 Or at 665-66.

On appeal, the defendant argued for the first time that the imposition of that sentence based in part on a judicial finding that he was a dangerous offender effected a violation of his constitutional rights under *Apprendi* and *Blakely*. The Supreme Court rejected the defendant's argument. The court held that, once the defendant waived his right to a jury trial in the first instance, he then had the burden of objecting if he later thought that the court was violating his jury trial right at sentencing. The court also noted that "[i]n producing evidence of his own psychological condition, then, defendant admitted facts sufficient to support the trial court's findings that he was subject to an enhanced sentence as a dangerous offender, thus foreclosing any relief under *Apprendi*." *Id.* at 670.

The facts of this case do not match neatly the facts of either *Harris* or *Heilman*. Although defendant testified that he had smoked marijuana with D on more than one occasion, he arguably did not make that admission "for purposes of sentencing." To that extent, this case is akin to *Harris,* which would suggest that defendant's testimony was not a knowing waiver of his Sixth Amendment rights for that purpose. But here, as in *Heilman*, defendant failed to object at the sentencing hearing to use of those statements for sentencing purposes, and the statements were arguably sufficient to "foreclose[ ] relief under *Apprendi*." Unlike either *Harris* or *Heilman*, however, in this case, defendant's case was tried to a jury. As a result, defendant never explicitly waived his right to a jury at the outset of the proceedings, as the defendants did in both of those cases, although arguably he did make such a waiver with respect to the particular fact that he admitted at trial.

In sum, it is reasonably in dispute whether defendant's "admission" in this case constituted a knowing waiver of his jury trial right foreclosing relief under *Apprendi*. It is not, however, a question we need to answer here, where defendant raises the issue for the first time on appeal. The court's imposition of the departure sentence was not plain error.

Affirmed.