Argued and submitted October 29, 2010, affirmed February 16, 2011

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## DONALD JOSEPH LAFFERTY,
*Defendant-Respondent.*

Harney County Circuit Court
0704166CR, 0708289CR;
A137373 (Control), A137374

247 P3d 1266

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for appellant. With him on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Meredith Allen, Senior Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

.

## BREWER, C. J.

The state appeals from judgments convicting defendant of third-degree assault in one case and first-degree burglary in another. ORS 163.165; ORS 164.225. The state challenges the sentences that the trial court imposed for those crimes, arguing that the court miscalculated defendant's criminal history score. *See* ORS 138.060(1)(e) (state may appeal a "judgment of conviction based on the sentence as provided in ORS 138.222"). Defendant responds that the trial court correctly determined, under *State v. Harris*, 339 Or 157, 118 P3d 236 (2005), that it could not use defendant's juvenile adjudication in calculating his criminal history because he had not knowingly relinquished his right to a jury determination concerning that juvenile adjudication. As explained below, although the state provided adequate notice under ORS 136.765 that it intended to use defendant's juvenile adjudication at sentencing, the trial court correctly determined that, in the circumstances presented here, *Harris* controls. We therefore affirm defendant's convictions and sentences.

The pertinent facts are procedural. In April 2007, defendant was indicted on numerous offenses in the first case. Shortly thereafter, the prosecutor sent the following written plea offer to defense counsel:

"1. *Lafferty*: Plea guilty Assault II. State will dismiss remaining counts and will agree to [Ballot Measure 11] sentence of 70 months with no departure under a guideline sentence.

"* * * * *

"A prior juvenile person felony can be used in determining a defendant's criminal history score even though he did not have a right to a jury trial in that proceeding. *State v. Stewart/Billings*, 321 Or 1[, 829 P2d 1013] (1995). *State v. Harris*, 339 Or 157[, 118 P3d 236] (2005), did not change that rule but said that a prior nonjury juvenile adjudication may be used to lengthen a criminal sentence so long as the existence of that prior adjudication is either proven to a jury or is admitted by the defendant."

Attached to the prosecutor's letter was a criminal history worksheet showing that defendant's sole criminal history

was a 2002 juvenile adjudication in Harney County Circuit Court which the worksheet described as a "person felony."[1]

In the second case, defendant was charged by information with first-degree burglary. After the second case was filed, the prosecutor sent defense counsel a letter containing an amended plea offer to cover both cases:

"1.   Lafferty: Plea guilty to Burglary I (9D) and Assault III (6D).   Open   sentencing   and   issue   of   consecutive/ concurrent sentences left to discretion of court."

On August 17, 2007, defendant filed a written petition to enter a guilty plea that provided, in part:

"3.   I wish to plead guilty to the charge(s) of Assault III the lesser included offense of count two of the indictment and Burglary I, in the information.

"* * * * *

"5.   I understand that I may plead 'Not Guilty,' the Constitution guarantees me (a) the right to a speedy and public trial by jury[.] * * *

"6.   I also understand that if I plead guilty the court may impose the same punishment as if I had pled 'not guilty,' stood trial, and been convicted.

"7.   I know that if I plead guilty to this count, the maximum possible sentence that the Judge could impose is 25 years. I know also that the sentence is up to the court. This case is subject to the sentencing guidelines.

"* * * * *

"9.   I know that the law provides for an increase in the maximum up to 30 years if I qualify as a dangerous offender. I understand that this will not happen in this case.

"I know that the firearm enhancement does not apply.

"* * * * *

---

[1] Under OAR 213-004-0007, a person has a criminal history score of "D" if his or her "criminal history includes one adult conviction or juvenile adjudication for a person felony; but no adult conviction or juvenile adjudications for a non-person felony."

"11.   I declare that no officer or agent of any branch of government (federal, state, or local) has made any promise or suggestion of any kind to me or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any other form of leniency if I plead guilty, except: A. Defendant agrees to plea to Assault III the lesser included offense of Count II and Burglary I in the new information[.] Defendant further admits that he caused or threatened physical injury to [the victim] as part of the burglary so that it is a crime seriousness of 9. In exchange the District Attorney agrees to dismiss all other cases and counts. B. District Attorney and Defendant agree to open sentencing."

The court conducted the following colloquy with defendant at the plea hearing:

"[The agreement] talks about your right to have a trial and all those rights that go along with having a trial. If you enter a plea of guilty, you're giving up those rights, the right to raise defenses to the charges, at least as to the charges to which you're pleading, and I understand there will be a number of charges dismissed, and that will happen. But at least as to the charges to which you're pleading, you're giving up your right to have that trial. So you understand that?"

The court subsequently inquired of counsel "as far as what type of sentence should be imposed, is there any agreement as to that?" Defense counsel replied, "The only agreement is that it's open sentencing." In accepting defendant's guilty pleas, the court reviewed with defendant the elements of each charge, including the allegation that supported the increased crime seriousness score on the burglary charge, and defendant specifically pleaded guilty to that fact, as well as the elements of each offense.

Thereafter, a presentence investigation report was prepared that included defendant's juvenile adjudication in his proposed criminal history score. Before the sentencing hearing, defendant filed a sentencing memorandum objecting that, under *Harris*, the state could not use the juvenile adjudication and that the proper criminal history score was "I." The state responded that, under Senate Bill 528 (codified now at ORS 136.760 to 136.792), it had provided sufficient

notice to defendant that it intended to rely on his juvenile adjudication as an "enhancement fact," and that, under ORS 136.776, when a defendant waives his right to a jury trial on guilt or innocence, he or she also waives the right to a jury trial on all enhancement facts. Therefore, the state reasoned, the guilty pleas necessarily constituted a waiver of defendant's right to a jury trial on sentencing enhancement facts. The state maintained that, because defendant did not dispute the existence of the juvenile adjudication, the court was required to use it in calculating his criminal history score, which therefore was "D" under the sentencing guidelines.[2]

At the sentencing hearing, the prosecutor further argued that the provisions of ORS 136.760 through 136.792 essentially superseded the holding in *Harris*, and that, because the legislation was intended to address, among other things, the constitutional problem identified in *Blakely v. Washington*, 542 US 296, 303, 124 S Ct 2531, 159 L Ed 2d 403 (2004) (a defendant is entitled to a jury trial on sentencing enhancement facts), compliance with ORS 136.760 through 136.792 obviated any constitutional concern about the scope of defendant's waiver of his right to a jury trial. The trial court disagreed, concluding that, under *Harris*, it was precluded from using defendant's juvenile adjudication in calculating his criminal history score.

The state appealed. Its argument before this court is essentially two-fold: First, the state asserts that it complied with the notice requirements of ORS 136.765 regarding its intention to use defendant's juvenile adjudication to calculate his criminal history score. Second, the state urges, it follows that defendant waived his right to a jury trial not only on the issue of guilt or innocence, but also with respect to sentencing enhancement factors. The state argues that we should remand for resentencing, at which "the state should be entitled to prove the existence of the juvenile adjudication to the trial court unless defendant chooses to admit the fact."

---

[2] Specifically, the state argued, " 'The State's burden to prove criminal history for sentencing purposes is met by the [PSI], unless the defendant challenges the history. If he does, the state must prove any disputed part by a preponderance of the evidence.' *State v. Tapp*, 110 Or App 1[, 821 P2d 1098] (1991)."

Defendant responds, first, that the state failed to provide adequate notice that it intended to rely on the juvenile adjudication as a sentencing enhancement fact; second, that to the extent ORS 136.776 purports to create a *per se* presumption that any jury waiver on the issue of guilt or innocence also necessarily is a knowing and voluntary relinquishment of a defendant's right to a jury trial on sentencing enhancement facts, it is unconstitutional; and third, that the state is not entitled to the remedy it seeks—remand to prove defendant's juvenile adjudication by a "beyond a reasonable doubt" standard—because it took the position before the sentencing court that it was not required to do so. *See* 240 Or App at 569 n 2.

■    As explained below, we agree with the state on the first question: We conclude on the record before us that the state satisfied the notice requirements of ORS 136.765 when it conveyed the plea offers to defendant's counsel. With respect to the second issue, we reject the state's construction of ORS 136.776 as creating an "implied waiver" such that any guilty plea necessarily encompasses both the guilt or innocence issue and sentencing enhancement issues. Nor do we accept defendant's argument that ORS 136.776 is unconstitutional because it creates such an implied waiver. As explained below, we conclude that ORS 136.776 instructs trial courts to secure written jury waivers with respect to both the issue of guilt or innocence as well as sentencing enhancement facts. Thus, to the extent that the trial court erred, it did so by accepting a jury waiver that pertained to guilt or innocence but did not address sentencing enhancement factors. That error, however, is not cognizably within the scope of this appeal. Because defendant did not validly waive his right to a jury trial on sentencing enhancement facts, and the state did not seek to prove those facts beyond a reasonable doubt, we conclude that the correct disposition in this case is simply to affirm.[3]

---

[3] We note that, had the trial court concluded that defendant was not provided sufficient notice of the enhancement fact, or had the trial court refused to give the state an opportunity to prove that fact, a remand for resentencing might be required in order to allow the court to empanel a jury to decide the sentencing enhancement fact or to secure a valid waiver of jury on the question. However, as noted above, *see* 240 Or App at 569 n 2, the state took the position in the trial court

We begin by setting out the pertinent legal framework. In 2000, the United States Supreme Court announced in *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000), that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* In 2004, the Court concluded in *Blakely* that *Apprendi* applied to factual findings in support of upward departure sentences imposed pursuant to sentencing guidelines, except for facts of prior convictions and those "admitted by the defendant." 542 US at 303. *See also Dilts v. Oregon*, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004) (applying *Blakely* to the Oregon sentencing guidelines). In the wake of *Apprendi* and *Blakely*, numerous issues concerning the scope of a defendant's right to a jury trial on sentencing issues came before the Oregon courts. Among those cases was *Harris*, which posed questions involving the use of juvenile adjudications as criminal history and the scope of a defendant's waiver of his or her right to a jury trial.

In *Harris*, the defendant, who had pleaded guilty in accordance with a plea petition that "expressly called for open sentencing," 339 Or at 160, objected at sentencing to the use of a juvenile adjudication to increase his criminal history score. *Id.* at 161. The Oregon Supreme Court, after reviewing the United States Supreme Court's jurisprudence that underlay the "[o]ther than the fact of a prior conviction" exception set forth in *Apprendi*, concluded that a juvenile adjudication did not fall within the scope of a "fact of a prior conviction," because juveniles have no right to a jury trial in such adjudications under Oregon law. The court concluded:

> "[W]e hold that the use of prior juvenile adjudications as sentencing factors in Oregon does not violate the jury trial right guaranteed by the Sixth Amendment. At the same time, we also hold that the Sixth Amendment requires that

that its PSI satisfied its burden to prove the sentencing enhancement fact "by a preponderance of the evidence." Defendant notes—and the state does not dispute—that sentencing enhancement facts must be proved to the trier of fact beyond a reasonable doubt. *See* ORS 136.785(2) ("The state has the burden of proving an enhancement fact beyond a reasonable doubt."); *Blakely*, 542 US 296 (same). Given the state's position before the trial court, a remand to afford the state a further opportunity to satisfy its burden of proof on that issue is not appropriate.

when such an adjudication is offered as an enhancement factor to increase a criminal sentence, its existence must either be proved to a trier of fact or be admitted by a defendant for sentencing purposes following an informed and knowing waiver."

*Id.* at 175.

The court in *Harris* also addressed the state's alternative contention that, because the defendant's guilty plea included enhancement facts, the use of the juvenile adjudication to enhance his sentence fell within the exception that the Court recognized in *Blakely* for facts "admitted by the defendant." 542 US at 303. The court rejected the state's argument on that issue:

"A guilty plea ordinarily constitutes such a waiver with regard to the jury trial right. *Brady v. United States*, 397 US 742, 748, 90 S Ct 1463, 25 L Ed 2d 747 (1970). To be valid, however, such a waiver must show 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938).

"In this case, defendant clearly waived his right to have a jury decide the charges as to which he ultimately was convicted; defendant pleaded guilty to a reduced number of charges in return for the prosecution's promise to dismiss the remaining criminal counts. That bargain, however, did not encompass any aspect of defendant's prospective sentence. Defendant went on to participate in a proceeding clearly identified in his plea petition as 'open' sentencing, *i.e.*, no sentencing agreements had been reached between the parties prior to the sentencing proceedings, and both defendant and the prosecution were entitled to present evidence in support of their respective positions regarding upward or downward departure sentences. Thus, although defendant's plea petition required him to report any past juvenile adjudications, nothing in the record demonstrates that the statements that defendant made in his guilty plea also were made 'for the purpose of dispensing with proof of a fact in issue' at sentencing. *Foxton* [*v. Woodmansee*, 236 Or 271, 278, 386 P2d 659 (1963), *reh'g den*, 236 Or 271 (1964)]."

*Harris*, 339 Or at 173.

While *Harris* was working its way through the courts, the legislature was developing legislation in response to the holdings in *Blakely* and *Dilts*. That legislation is codified at ORS 136.760 through 136.792, and we describe it in detail, because several of its provisions are in play in this case.[4] ORS 136.765 provides:

> "In order to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding, the state shall notify the defendant of its intention to rely on the enhancement fact by:
>
> "(1)  Pleading the enhancement fact in the accusatory instrument; or
>
> "(2)  Within a reasonable time after filing the accusatory instrument, providing written notice to the defendant of the enhancement fact and the state's intention to rely on it."

ORS 136.770 provides that sentencing enhancement facts that relate to the charged offense are to be tried to the jury during the guilt phase unless the court defers trial of such facts to the sentencing phase or the defendant "[m]akes a written waiver of the right to a jury trial on the enhancement fact" and either "[a]dmits to the enhancement fact" or "[e]lects to have the enhancement fact tried to the court." Similarly, ORS 136.773 provides that sentence enhancement facts that relate to the defendant rather than to the charged offense will be tried during the sentencing phase, except again, where "the defendant makes a written waiver of the right to a jury trial on the enhancement fact" and either admits to it or elects to have it tried to the court.

ORS 136.776, which is central to the state's argument in this case, provides:

> "When a defendant waives the right to a jury trial on the issue of guilt or innocence, the waiver constitutes a written waiver of the right to a jury trial on all enhancement facts whether related to the offense or the defendant."

---

[4] ORS 136.760 provides definitions, none of which is at issue here; the parties agree that defendant's juvenile adjudication is an "enhancement fact" as described in that statute.

ORS 136.780 pertains to evidence of sentencing enhancement facts. ORS 136.785 describes the state's burden of proof on enhancement facts as "beyond a reasonable doubt." ORS 136.790 and ORS 136.792 pertain to the trial of sentencing enhancement issues after remand.

■     The threshold question in this case is whether defendant received adequate notice under ORS 136.765 that the state intended to use his juvenile adjudication in the calculation of his criminal history score. We addressed a similar issue in *State v. Wick*, 216 Or App 404, 173 P3d 131 (2007), *modified on recons*, 229 Or App 86, 209 P3d 857 (2009). In *Wick*, the defendant, who had been found guilty of several offenses after a jury trial, was sentenced shortly after ORS 136.765 went into effect. Because the court was considering the imposition of an enhanced sentence,[5] the state argued that it should empanel a jury to find sentencing enhancement facts. The defendant, however, argued that no sentencing enhancements could be applied because the state had not given him adequate notice under ORS 136.765 that it intended to seek an enhancement. We analyzed the problem as follows:

> "The state contends that the 'provisions of SB 528 do not indicate what form or how detailed the content of any notice of 'enhancement facts' must be, other than it be in writing.' According to the state, it satisfied the notice requirement of [ORS 136.765] by providing defendant with a sentencing memorandum on July 18, 2005, that expressly advised the court and defendant that the state was relying on ORS 137.123 to justify imposition of consecutive terms and described the specific conduct that would support consecutive terms. The state concludes that, in light of the notice it provided to defendant, we 'should remand the matter for further proceedings consistent with *Blakely* and [ORS 136.765].'

---

[5] *Wick* concerned the imposition of consecutive sentences and, at the time the trial court was considering the matter, Oregon law was unclear about whether findings in support of consecutive sentences were subject to the rule from *Apprendi* and *Blakely*. The United States Supreme Court ultimately concluded that they were not. *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *rev'd*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009). That change in the underlying substantive law, however, does not undermine the validity of our analysis in *Wick* concerning adequate notice under ORS 136.765.

"We agree with the state that its sentencing memorandum satisfies the notice requirement of [ORS 136.765]. The legislation, as explained above, allows the state to either plead the enhancement fact in the indictment or '[w]ithin a reasonable time after filing the accusatory instrument, provid[e] written notice to the defendant of the enhancement fact and the state's intention to rely on it.' [ORS 136.765(2)]. Thus, for the memorandum to satisfy the notice requirement of [ORS 136.765], the memorandum must have (1) been provided within a reasonable time after the filing of the indictment; (2) been in writing; and (3) notified defendant of the facts that the state intended to rely upon to establish the basis for consecutive sentences."

*Wick*, 216 Or App at 409-10. In this case, defendant asserts that the purported written notice did not unambiguously convey to him that the state intended to rely on his juvenile adjudication in determining his criminal history score. We disagree.

When it sent him the first plea offer, the state provided defendant with a "criminal history worksheet" that not only indicated that defendant had a juvenile adjudication in his "criminal history," but also indicated the date of that adjudication and the county from which it originated. Defendant argues that the "criminal history worksheet" was "inaccurate" because the column in which the date of the juvenile adjudication was listed is headed "date of conviction." Defendant asserts that, because juvenile adjudications are not "convictions," the form did not provide adequate notice. That argument is unpersuasive. The "date of conviction" entry specifically listed the "type" as a "juvenile person felony." Moreover, the worksheet was accompanied by a letter stating (as noted above) that "[a] prior juvenile person felony can be used in determining a defendant's criminal history score[.]" Finally, in the second plea offer, the prosecutor specifically listed not only the crime seriousness of the two counts that were the subject of the offer, but also listed the criminal history score for each count as "D," which, as noted, is the proper criminal history score if defendant's juvenile adjudication is used to establish the criminal history score. We conclude that, when viewed together, the plea offers and the criminal history worksheet provided adequate notice of the state's

intent to rely on defendant's prior juvenile adjudication in determining his criminal history score.

We turn to the pivotal issue in the case, that is, whether in pleading guilty to the offenses, defendant waived his right to a jury determination of any enhancement facts. We note at the outset that the issue presented in this case is not identical to the issue decided in *Harris*: In *Harris*, the state argued that the defendant's guilty plea did not merely waive his right to a jury determination of enhancement facts, but also constituted a guilty plea to all enhancement facts. Here, by contrast, the state does not suggest that defendant's guilty plea to the crimes constituted an intentional guilty plea to the enhancement facts. Rather, it asserts that, by operation of ORS 136.776, defendant is deemed to have agreed to a bench trial on any enhancement facts by pleading guilty to the crimes. In *Blakely*, the Court said the following on that subject:

> "[N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant *either stipulates to the relevant facts or consents to judicial factfinding. See Apprendi*, 530 US at 488; *Duncan v. Louisiana*, 391 US 145, 158, 88 S Ct 1444, 20 L Ed 2d 491 (1968). If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial."

*Blakely*, 542 US at 310 (emphasis added). Thus, the question reduces to whether defendant "consent[ed] to judicial factfinding." *Id.*

To determine what the Court meant by "consent" in this context, we turn to the cases it cited, *Apprendi* and *Duncan*. In *Apprendi*, the discussion to which the Court referred concerned facts admitted by a defendant, not consent to judicial factfinding. *See Apprendi*, 530 US at 488. In *Duncan*, although holding that the right to a jury trial is a fundamental right, the Court specifically declined to call into question the common practice "of accepting waivers of jury trial[.]" 391 US at 158 (citing *Patton v. United States*, 281 US

276, 50 S Ct 253, 74 L Ed 854 (1930)). *Patton*, in turn, addressed whether the right to a jury trial could, in fact, be waived at all.[6] The Court in that case concluded that the Sixth Amendment conferred "a right upon the accused which he may forego at his election." 281 US at 298. In sum, none of those cases expressly decided what is required for a defendant to "consent[ ] to judicial factfinding." *Blakely*, 542 US at 310.

The Court, however, has provided a more general statement about the relinquishment of constitutional rights:

"What suffices for waiver depends on the nature of the right at issue. '[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.' *United States v. Olano*, 507 US 725, 733, 113 S Ct 1770, 123 L Ed 2d 508 (1993). For certain fundamental rights, the defendant must personally make an informed waiver. *See, e.g., Johnson v. Zerbst*, 304 US 458, 464-465, 58 S Ct 1019, 82 L Ed 1461 (1938) (right to counsel); *Brookhart v. Janis*, 384 US 1, 7-8, 86 S Ct 1245, 16 L Ed 2d 314 (1966) (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. 'Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has-and must have-full authority to manage the conduct of the trial.' *Taylor v. Illinois*, 484 US 400, 417-418, 108 S Ct 646, 98 L Ed 2d 798 (1988). As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." ' *Link v. Wabash R. Co.*, 370 US 626, 634, 82 S Ct 1386, 8 L Ed 2d 734 (1962) (quoting *Smith v. Ayer*, 101 US 320, 326, 25 L Ed 955 (1880))."

---

[6] The question in *Patton*, more specifically, was whether a defendant could waive the requirement that a jury be composed of 12 people, but the Court stated that it must reject "the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a lesser number than twelve, and must treat both forms of waiver as in substance amounting to the same thing." 281 US at 290. The underpinning of *Patton*, that a jury must have 12 members to pass constitutional muster, is at odds with the Court's later decision in *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972).

*New York v. Hill*, 528 US 110, 114-15, 120 S Ct 659, 145 L Ed 2d 560 (2000) (brackets in original). As noted directly above, the Court cited *Johnson* for the proposition that, for certain fundamental rights, "the defendant must *personally* make an *informed* waiver." *Id.* (emphasis added). The waiver of a right to jury trial—including a waiver on sentencing enhancement facts—is one of those fundamental rights. *See, e.g., State v. Clark*, 220 Or App 197, 202, 185 P3d 516 (2008) ("The record does not demonstrate that, when defendant entered his guilty plea, he knew that he had the right to have a jury determine aggravating sentencing factors. * * * Neither the plea agreement nor anything else in the record supports the inference that defendant was aware that the jury trial right extended to sentencing facts."); *cf. Janis*, 384 US at 8-10 (counsel's agreement to a limited bench trial that did not allow for cross-examination of witnesses did not waive the defendant's constitutional right, given that he neither agreed nor acquiesced in his counsel's attempted waiver).

■        Although the decisions described above establish that a defendant's right to have a jury determine sentencing enhancement facts must be personally waived by the defendant with knowledge of the right being relinquished, we acknowledge that the Oregon Supreme Court has held that, in certain circumstances, an "implied waiver" may occur. In *State v. Heilman*, 339 Or 661, 669, 125 P3d 728 (2005), the court stated:

> "To be valid, a waiver of a jury trial must show ' "an intentional relinquishment or abandonment of a known right or privilege." ' *State v. Harris*, 339 Or 157, 173, 118 P3d 236 (2005) (quoting *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938)). Here, defendant's waiver constituted defendant's agreement to forgo a jury trial on the charges listed in the indictment. *See Harris*, 339 Or at 173 (so stating). Defendant therefore intentionally and knowingly relinquished his right to a jury trial on the pending charges. Moreover, as noted, defendant did not purport to qualify his waiver of a jury trial in any way; neither did he subsequently assert during the course of the trial that any limits or conditions applied to his waiver. We conclude that defendant, once having made an apparently unqualified waiver of the jury right, had the burden of

objecting in some manner, thereby preserving his argument for appeal, if he regarded any action by the trial court as a violation of his right to trial by jury. * * *

"Before sentencing, defendant's counsel did not make any kind of discernible objection or other assertion that defendant wanted a jury, rather than the court, to determine the facts for purposes of sentencing. That fact stands in sharp contrast to this court's decision in *Harris*. In that case, the defendant expressly objected to the trial court's use of his prior juvenile adjudication at his sentencing hearing. As a result, this court could not conclude that the 'defendant's acknowledgment of a prior juvenile adjudication in filling out his guilty plea amounted to either an admission or a knowing waiver of his jury trial right for sentencing purposes.' *Harris*, 339 Or at 173."

However, to the extent that the state suggests that the present case is more like *Heilman* than *Harris*, we disagree. In *Harris*, as in this case, the plea agreement was silent with respect to sentencing enhancement facts and provided for "open sentencing"; in this case, like in *Harris* and unlike in *Heilman*, defendant did assert both before sentencing and at sentencing that he was entitled to factual findings by a jury in support of sentencing enhancement. *See also State v. Gornick*, 340 Or 160, 169, 130 P3d 780 (2006) (no plain error in failing to empanel sentencing jury where the defendant "explicitly consented to having the trial court impose a 'sentence which the Court [found] appropriate, up to the [five-year] maximum sentence'"). In short, cases such as *Heilman* and *Gornick* concerned the existence of plain error, and in particular whether competing inferences could be drawn about the defendants' intentions in light of their failure to object at sentencing. *See, e.g., State v. Lennon*, 348 Or 148, 152 n 2, 229 P3d 589 (2010) (so noting).

In the present case, by contrast, the asserted error was preserved. Thus, the question is whether defendant made an "intentional relinquishment or abandonment of a known right or privilege" to a jury determination of sentencing enhancement factors under these circumstances, where the plea agreement and plea colloquy did not specifically address sentencing enhancement facts and did specify "open sentencing." The state does not direct us to anything in the

record indicating that the right to a jury determination of sentencing enhancement facts was "known" to defendant, much less that he personally (or even through counsel) intentionally relinquished such a right. Rather, the state argues that, because it notified defendant that it intended to use his juvenile adjudication in calculating his criminal history,

> "[i]f a defendant waives his jury-trial right on the underlying offenses and pleads guilty, that waiver extends to sentence-enhancement facts that the state previously has alleged in accordance with ORS 136.765. That is precisely what occurred here. * * * The [trial court] apparently was concerned about the fact that it had not engaged in a colloquy with defendant about the jury-trial right on sentence-enhancement facts and about whether defendant's waiver extended to the existence of the juvenile adjudication. That sort of colloquy was not required, however. Nothing in ORS 136.776 (which governs the scope of waivers when a defendant pleads guilty to the underlying offense) or any other statutory provision that the state is aware of imposes such a requirement."

The state may be correct that nothing in ORS 136.776, or any other *statutory* provision, requires the trial court to ensure that a defendant's guilty plea (and consequent waiver of his right to a jury trial) specifically encompasses his right to have a jury decide enhancement facts. But the right in question is a constitutional right, not a statutory one. Therefore, the fact that the governing *statutes* may not specifically require that a defendant personally and intentionally waive that right with knowledge of the right being waived does not mean that the constitution no longer requires it.

■■ As noted, ORS 136.776 provides that, "[w]hen a defendant waives the right to a jury trial on the issue of guilt or innocence, the waiver constitutes a written waiver of the right to a jury trial on all enhancement facts[.]" Because a waiver of the right to jury trial must occur before either a bench trial may be held or a guilty plea may be taken, the statute applies in either of those circumstances. The text of the statute supports the state's contention that a written jury waiver on the issue of guilt must also include a waiver of the right to a jury trial on enhancement facts. In context, in light of the provisions described above about how enhancement

facts are to be tried, *see* ORS 136.770; ORS 136.772, it is apparent that the legislature generally did not intend to give a defendant the option to seek a bench trial or plead guilty as to the crime itself but reserve the right to a jury trial on sentencing enhancement facts.[7]

The question remains, though, whether ORS 136.776 has the effect that the state posits—that *any* waiver of the right to jury trial, regardless of whether the defendant knows of his right to a jury trial as to enhancement facts and regardless of whether he intentionally waives those rights— must be construed as an adequate waiver of the right to a jury trial as to enhancement facts as well as guilt or innocence. We do not believe that the statute may be so construed. First, the state's proposed interpretation raises the question of what the word "written" refers to: If the state is correct that a waiver on the question of guilt or innocence is to be construed as a waiver on sentencing enhancement facts, then what exactly is required to be in the *"written* waiver of the right to a jury trial on all enhancement facts"? ORS 136.776 (emphasis added). Clearly, the statute requires that something be in writing; it is difficult to square the idea of an "implied" waiver with a requirement that the waiver be in writing.

Admittedly, however, the statute is ambiguous. On the one hand, it could mean that a waiver of the right to a jury trial on the issue of guilt or innocence automatically waives the right to a jury trial on all enhancement facts, irrespective of whether a written waiver expressly refers to the latter issue. Alternatively, the legislature may have intended to provide, without altering ordinary waiver principles, only that it is not permissible to waive the right to a jury trial with respect to the issue of guilt or innocence without also waiving the right to a jury trial with respect to all enhancement facts. Neither the text nor the context of ORS 136.776 resolves that ambiguity.

Nor, for that matter, is the ambiguity resolved by resort to the statute's legislative history. ORS 136.776 was

---

[7] We note that the provisions pertaining to jury trial on enhancement facts after remand contain no such limitations. *See* ORS 136.790; ORS 136.792.

enacted as part of Senate Bill 528 during the 2005 legislative session. The text of the statute was inserted into the bill in the "dash three" amendment. Before that amendment, the bill had provided, in pertinent part:

"**SECTION 3**.  (1) When an enhancement fact relates to an offense charged in the accusatory instrument, the court shall submit the enhancement fact to the jury during the trial phrase of the criminal proceeding unless the defendant makes a written waiver of the right to a jury trial on the enhancement fact and:

"(a)   Admits to the enhancement fact; or

"(b)   Elects to have the enhancement fact tried to the court.

"(2)   If the defendant makes the election under subsection (1)(b) of this section:

"(a)   The enhancement fact shall be tried during the sentencing phase of the criminal proceeding as described in section 4 (5) of this 2005 Act, if the defendant is found guilty during the trial phase of the proceeding; and

"(b)   The waiver of the right to a jury trial on the enhancement fact is a waiver of the right to a jury trial on all enhancement facts whether related to the offense or the defendant."

Senate Judiciary Committee, Proposed Amendments to Senate Bill 528, SB 528-2, Mar 29, 2005. The foregoing text was made an independent section in the "dash three" amendments. That version of the bill read, in pertinent part:

"**SECTION 5**.   When a defendant waives the right to a jury trial on the issue of guilt or innocence, the waiver constitutes a written waiver of the right to a jury trial on all enhancement facts whether related to the offense or the defendant."

Senate Judiciary Committee, Proposed Amendments to Senate Bill 528, SB 528-3, Mar 31, 2005. That text remained unchanged throughout the remainder of the legislative debate on SB 528 and was enacted as ORS 136.776. *See* Or Laws 2005, ch 463, § 5.

Our review of the legislature's consideration of SB 528 has revealed only one exchange that touched on the issue

presented here. In a public hearing on the bill, committee counsel Joe O'Leary explained the "dash three" amendments as follows:

> "Section 5 of the dash three * * * makes a clarification that was not in the dash two, and that clarification is that in a situation where the defendant waives the right to a jury trial on the issue of guilt or innocence, that is to say, not as to enhancement factors, but rather to the elements of the criminal offense, that by virtue of that waiver, the defendant is also waiving the right to have a jury consider any offense related enhancement factors or any defendant related enhancement factors."

Audio Recording, Senate Judiciary Committee, SB 528, Mar 31, 2005, http://www.leg.state.or.us/listn/archive/archive.2005s/SJUD-200503311309.ram, at 33:26.

O'Leary pointed out that the discussions in the Governor's work group that produced SB 528 had concerned

> "how does one treat a waiver of the right to jury, and the intent of the work group, and I believe as now reflected in the dash three was that if the defendant waived the right to jury as to the elements of the offense * * * then that was a waiver as to the offense related enhancement facts and the defendant related enhancement facts."

*Id.* at 34:53. As O'Leary explained, section five was part of the broader provision that addressed a defendant's decision whether to have enhancement facts tried to a jury or to a court, "section three and section four deal with the waiver issue as to when the defendant waives the enhancement related facts, that's section three * * * and then in section four it discusses the waiver as to the defendant related enhancement facts." *Id.* at 35:16. Senator Burdick, the committee chair, engaged O'Leary in a colloquy regarding the operation of section five:

> "Senator Burdick: So basically, by waiving the right to a jury trial, as I understand it, you're also waiving the right to a jury trial on the enhancement facts?
>
> "O'Leary: Senator Burdick, the tricky thing is that as we have always talked about waiving the right to a jury trial, what we've meant is waiving the right to a jury trial on the

elements of the offense. So, to the extent that that's what we mean when we say you're waiving the right to a jury trial, what we mean is if you're waiving the right to a jury trial as to the elements of the offense, then you're waiving the right to a jury trial as to the offense related enhancements and the defendant related enhancements.

"Senator Burdick: But if you take a jury trial, you can waive the right to a jury trial on either the offender or the offense related?

"O'Leary: That's correct.

"Senator Burdick: One or both?

"O'Leary: That's correct.

"Senator Burdick: Okay, thank you.

"O'Leary: We almost need to go through a trial * * * A mock trial."

Audio Recording, Senate Judiciary Committee, SB 528, Mar 31 2005, http:// www.leg.state.or.us/listn/archive/ archive.2005s/SJUD-200503311309.ram, at 36:25.

As the foregoing colloquy demonstrates, the legislature's focus with regard to section five of SB 528-3, later ORS 136.776, was on how that provision fit within the broader statutory scheme; specifically, how it interacted with sections three and four, which later became ORS 136.770 and ORS 136.773, respectively. Nothing in the legislative history bears directly on the issue at hand.

Accordingly, we turn to a familiar maxim of statutory construction to resolve the question before us. In *State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996), the court held that, "when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning." To construe the statute the way the state suggests would be to say that it overrides the constitutional mandate that a waiver of a jury trial on sentencing enhancement facts be an "intentional" waiver of a "known" right. That, of course, a statute may not do.

■ The plausible reading of ORS 136.776 that does not create that constitutional infirmity is that the statute

requires that a defendant, in order to waive his constitutional right to a jury trial on the question of guilt or innocence, must also make a knowing and intentional waiver of his right to a jury trial on sentencing enhancement facts, and must do so in writing. Read in that manner, ORS 136.776 instructs courts and litigants as to the form that a waiver of jury trial rights must take. Failure to abide by the statute and secure such a waiver—in writing—as to both guilt or innocence *and* sentencing enhancement facts is just that, a failure to comply with the statute.

We further note that, in the majority of the cases we have seen since the enactment of ORS 136.776, that is exactly how the statute has been used: Defendants are informed via plea agreement and colloquy that, if they wish to waive a jury trial as to guilt or innocence, they also must waive their right to a jury trial as to sentencing enhancement facts. They then enter into written agreements that specify that they are waiving their rights to a jury trial as to both guilt or innocence and sentencing enhancement facts. In short, satisfying the statute while honoring a defendant's constitutional rights is not a difficult matter.

■   In this case, however, the necessary information for defendant to intentionally relinquish his right to a jury determination of sentencing enhancement facts was not included in the plea offer or agreement, nor was it imparted to him during the plea colloquy. In fact, the references to "open sentencing," and the court's statement to defendant that *"at least as to the charges to which you're pleading,* you're giving up your right to have a trial," may well have conveyed the opposite impression—that defendant had not relinquished any of his constitutional rights in regard to sentencing. (Emphasis added.)

Under those circumstances, the trial court correctly determined that *Harris* remains the controlling law and that defendant had not waived his right to a jury determination of sentencing enhancement facts.

Affirmed.