Submitted September 29, affirmed October 28, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FELIPE CISNEROS CARRERA,
aka Cisneros Felipe Carrera,
aka Feliipe Carrera,
aka Felipe Carrera-Cisneros,
aka Felipe Carrera Cisneros,
aka Felipe Cisneros-Carrera,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF150297; A169592

477 P3d 458

Defendant appeals from a judgment of conviction for attempted first-degree assault, ORS 161.405(2)(b), ORS 163.185, to challenge a 56-month sentence of imprisonment. First, he argues that the trial court erred in classifying his criminal history to place him on grid block 8-C, rather than 8-D, on the sentencing grid by considering a juvenile adjudication as a prior offense. Second, he argues that the trial court erred when it imposed a durational departure of 56 months' imprisonment without explaining the compelling circumstances justifying the departure. *Held*: Although the trial court erred in recognizing the juvenile adjudication as a prior offense in sentencing, the 56-month departure sentence was permissible with either criminal history score as framed by the plea agreement. Accordingly, the trial court did not err in imposing or explaining the sentence.

Affirmed.

Daniel J. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

## DeVORE, P. J.

Defendant appeals to challenge a 56-month sentence of imprisonment imposed as part of a judgment of conviction upon his guilty plea to attempted first-degree assault. He made the plea with an admission of a sentencing enhancement factor that he was on supervision at the time of the offense. He assigns two errors. First, he argues that the court erred by classifying his criminal history to place him on grid block 8-C, rather than 8-D, on the sentencing guideline grid. In making that determination, the trial court considered a juvenile adjudication as a prior offense over defendant's objection that defendant had not admitted, and a jury had not found, the existence of that adjudication. Next, he argues that the court erred by imposing a durational departure of 56 months' imprisonment purportedly without explaining why it found compelling circumstances to do so. For the reasons that follow, we agree that the trial court erred in recognizing the juvenile adjudication as a prior offense in sentencing, but we conclude that the 56-month departure sentence was permissible with either criminal history score and that the court did not err in imposing or explaining the sentence.

The dispositive facts are procedural and not disputed. Defendant and the state reached a plea agreement. Defendant pleaded guilty to attempted first-degree assault, ORS 161.405(2)(b) (attempt), ORS 163.185 (first-degree assault).[1] The state agreed to dismiss nine other charges. For purposes of sentencing later, defendant and the state had agreed to disagree whether defendant's criminal history score should place him in grid block 8-C or 8-D. The parties differed on whether his juvenile adjudication for unlawful use of a motor vehicle should be considered as an offense when determining his criminal history in sentencing for the attempted assault charge. In addition, defendant admitted, as a sentencing enhancement factor, that, at the time of the offense, he was on supervision. The parties

---

[1] In relevant part, ORS 163.185 provides, "(1) A person commits the crime of assault in the first degree if the person: (a) [i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon." The indictment alleged those elements and, in addition, that JL, the victim did not substantially contribute to the commission of the offense by precipitating the attack.

agreed that, at sentencing, defendant would urge application of grid block 8-D and seek a sentence of 27 months and no durational departure, while the state would urge application of grid block 8-C and seek a durational departure of 56 months. Before accepting the plea, the court clarified with defendant that the enhancement factor was a separate issue and that a durational departure for the enhancement up to 56 months could be imposed with *either* grid block 8-C or 8-D. Defendant acknowledged that he understood that to be true.

At the sentencing hearing, the state recounted the facts underlying the charge of attempted first degree assault. On May 31, 2015, the victim, JL, had been walking his dog when he heard a car speed up. He began running. Someone from the car began shooting a gun at him. Four bullet casings were found on the street. Two bullet holes were found in JL's house, where four adults and one child had been present at the time of the shooting. Police stopped the car in which defendant was a passenger. A bodycam video recording showed defendant's resistance to following an officer's directions when taking him into custody.

The state offered a sentencing memorandum with a criminal history worksheet reporting, among other things, that defendant had a 2010 juvenile adjudication for unlawful use of a motor vehicle in 2009. In addition, the state offered as an exhibit the register of actions for the juvenile proceedings. The state argued that, after turning 18 years of age, defendant had convictions or violations involving providing false information to police, driving while suspended, interfering with a peace officer, third degree felony assault, driving while under the influence of intoxicants, and unlawful possession of a firearm. The state argued that defendant has had repeated involvement with the court system, an unsuccessful diversion, and opportunities for probation. The state argued that defendant's behavior during the traffic stop here "displays defiance, disobedience, disregard for public safety, [and] disregard for the safety of others." The state recommended an upward departure of 56 months' imprisonment "because [defendant has] shown that he is a danger to the public, whether he's on supervision or not."

Defendant acknowledged that he had admitted the enhancement factor of being on supervision at the time of the offense, but he argued that something more should be necessary before relying on that factor. Assuming no durational departure should be imposed, defendant argued that the sentence should be 27 months where 27-28 months is the presumptive sentence for grid block 8-D. Defendant argued that grid block 8-D, not 8-C, was the appropriate score because the state had not established the existence of a past juvenile adjudication either by his admission or by a determination of that judicial fact before a jury in this case. To that point, he relied on *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *State v. Harris*, 339 Or 157, 118 P3d 236 (2005) (discussed below).

As for the initial issue, the trial court determined that the juvenile adjudication should be considered in determining defendant's criminal history in the grid block score of 8-C. The court, however, was careful to explain that the juvenile adjudication only related to criminal history aspect of the grid block determination, not to the issue of a durational departure due to an enhancement factor. The court went on to indicate that, regardless which grid block determination is correct, a durational departure of 56 months would be permissible. That is, because a durational departure permits a doubling of the presumptive sentences, a 56-month sentence—the most the state would seek—would be permitted with a grid block determination of either 8-C or 8-D. The court found that defendant had admitted the enhancement fact of being on supervision at the time of the offense and that is a "malevolent factor" in sentencing. Speaking to defendant, the court stated that "there was clearly an unsafe situation going on. One of the most severe unsafe ones I've seen in—around here." The court found substantial and compelling reasons to rely on the enhancement factor. The court explained, "I'm doing that, in part, well, largely in part because the circumstances were pretty egregious." The court added that, if it were not for the plea agreement, the sentencing would "highly likely [have] resulted in a grid block depart[ure] up to the 64 months—68 months."

Accordingly, the court imposed a sentence of 56 months with three years' post-prison supervision but with a waiver of fines and waiver of court-appointed attorney fees.

On appeal, defendant first argues that the trial court erred in considering a juvenile adjudication when determining his criminal history score, resulting in a grid block of 8-C, rather than 8-D. As to the determination of criminal history, we agree with defendant.[2]

In *Harris*, the Oregon Supreme Court examined the significance of the jury trial guarantee of the Sixth Amendment to the United States Constitution, given the absence of juries in juvenile adjudications, when considering whether juvenile adjudications may be recognized as prior offenses that may enhance a sentence for a later offense committed as an adult. 339 Or at 159-75. The court concluded that the consideration of prior juvenile adjudications in sentencing does not violate the Sixth Amendment, but, if the existence of a juvenile adjudication is offered as an enhancement factor to increase a criminal sentence, its existence must be proved to a trier of fact or admitted by a defendant for sentencing purposes following an informed and knowing waiver. *Id.* at 175 (relying on *Apprendi* and *Blakely*). In that case, the judgment was reversed and remanded for resentencing. *Id.*

Our subsequent decisions are in accord. In *State v. Murphy*, 205 Or App 675, 676, 135 P3d 357 (2006), we recognized that *Harris*, following *Apprendi* and *Blakely*, extends to the determination of the criminal history score. The trial court had erred when considering a juvenile adjudication in defendant's criminal history. *Id.* We remanded for resentencing. *Id.* In *State v. Lafferty*, 240 Or App 564, 569, 247 P3d 1266 (2011), the trial court had refused consideration of a juvenile adjudication when determining criminal history scores in a pair of consolidated cases. In the first case, the

---

[2] In relevant part, ORS 138.105(8)(c)(A) provides:

"*** [T]he appellate court has authority to review whether the sentencing court erred:

"(A) In ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

prior adjudication appeared in a criminal history worksheet with a prosecutor's letter to defendant, giving notice of intent to rely on the juvenile adjudication. *Id.* at 566-67. In the second case, the juvenile adjudication appeared in a presentence report. *Id.* at 568. The state appealed, challenging the trial court's refusal to take into account a juvenile adjudication. *Id.* at 569. We rejected the state's argument that either the pretrial notice to defendant or the defendant's waiver of a jury as to the pending charge served to waive the establishment of the existence of the juvenile adjudication before a fact finder. *Id.* at 570. We affirmed the trial court's refusal to treat the juvenile adjudication as a prior offense. *Id.* at 585.

In this case, defendant waived a jury as to the charge of attempted assault, but he did not waive a jury as to the determination that he had had a prior juvenile adjudication. He did not admit the adjudication for purposes of sentencing in this case. For its part, the state did no more than it did in *Lafferty* to establish the existence of the juvenile adjudication before a requisite fact finder. Accordingly, the trial court erred in using the juvenile adjudication to determine defendant's criminal history score as 8-C. That conclusion, however, does not ultimately affect the sentence in this case.

Defendant acknowledged both at the plea hearing and at the sentencing hearing the trial court's understanding that, regardless of whether defendant's criminal history score is 8-C or 8-D, a 56-month durational departure would be permissible in either case. Ordinarily, the presumptive sentence for a grid block 8-C is 29-34 months and the presumptive sentence for grid block 8-D is 27-28 months. OAR 213-004-0001, App 1 (Oregon Sentencing Guidelines Grid). Under OAR 213-008-0003(2), "A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term." Because the parties here had agreed that the maximum durational departure sentence in this case would be 56 months, the issue of a durational departure did not depend upon the determination of defendant's correct criminal history score. Consequently, defendant's sentence was determined by the durational departure, based on an aggravating factor, not based on his criminal history score.

Defendant argues that the trial court erred in making a durational departure because the court did not sufficiently explain its reasoning. In material part, OAR 213-008-0001 provides:

"[T]he sentencing judge shall impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

Defendant contends his admission of an enhancement factor is not enough in itself to explain why the judge concluded that there were substantial and compelling circumstances. He urges a remand for resentencing.

The scope of our review on this question is prescribed by ORS 138.105(8)(b), which provides:

"If the trial court imposed a sentence that departs from the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission, the appellate court's authority to review is limited to whether the trial court's findings of fact and reasons justifying a departure from the sentence prescribed by the rules of the Oregon Criminal Justice Commission:

"(A)   Are supported by the evidence in the record; and

"(B)   Constitute substantial and compelling reasons for departure."

Defendant's argument implicates both requirements, particularly the latter one. "In determining whether a factor constitutes a substantial and compelling reason for departure, we look at whether exceptional circumstances [exist that] overcome the presumption that the [presumptive] sentence accomplishes the purposes of the guidelines." *State v. Davilla*, 280 Or App 43, 58, 380 P3d 1003 (2016) (under *former* ORS 138.222 (2015) (internal quotation marks omitted)). We have recognized that committing an offense while on supervision as a result of a prior offense *is* a substantial and compelling reason to impose a departure sentence. *See State v. Gallegos*, 217 Or App 248, 256-57, 174 P3d 1086 (2007), *rev den*, 344 Or 670 (2008) (being on supervision as an aggravating

factor supporting departure although not listed in the non-exclusive list of factors in OAR 213-008-0002(1)(b)).

In this case, the sentencing court declared that the circumstances in which defendant attempted first degree assault provided substantial and compelling circumstances to warrant an upward departure. The record permitted the court to conclude, as the state argued, that defendant had "been intimately involved with the court system" and "was on supervision" when "he attempted to unlawfully cause physical injury to another by means of a deadly or dangerous weapon, that being the 9 millimeter Glock that was found in the glove box of the El Camino." His actions had shown, in the state's view, "that he is a danger to the public, whether he's on supervision or not." When adopting the state's recommendation, the trial court adopted its rationale and rejected defendant's contrary view.[3] In doing so, the trial court acted within the bounds of the its authority to determine a sentence "designed to fit both the offense and the offender." *See State v. Speedis*, 350 Or 424, 432, 256 P3d 1061 (2011) (affirming enhanced sentence on nonenumerated sentencing factors). Defendant admitted the enhancement factor that he was on supervision at the time he attempted first-degree assault using a deadly weapon. That admission on this record provides "evidence in the record" and "constitute[s] [a] substantial and compelling reason[] for departure." *See* ORS 138.105(8)(b) (review standards). Those things explain the trial court's durational departure in sentencing. *See State v. Williams*, 133 Or App 191, 195 n 2, 891 P2d 3, *rev den*, 321 Or 512 (1995) (affirming judgment imposing departure sentence considering, among other things, the defendants' disregard for any laws and inability to be deterred from committing new criminal activity). No further explanation was necessary.

We conclude that, although the trial court erred in determining defendant's criminal history, it did not err in imposing a durational departure sentence.

Affirmed.

---

[3] Defendant had argued that his admission had not encompassed "a separate malevolent quality and an inclination to increase–to commit increasingly serious crimes." The court's ruling on the record responded directly to that argument: "I believe [defendant] also admitted to the enhancement fact of being on supervision, *which includes that malevolent factor*." (Emphasis added.)